UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WALTER G. SMITH d/b/a IMPACT IMAGES, | § § § | |
| Plaintiff | § § | |
| vs. | § § | |
| DALLAS COWBOYS MERCHANDISING, LTD., DALLAS COWBOYS FOOTBALL CLUB, LTD., DALLAS COWBOYS PRO SHOPS, L.P., ESPORTS PARTNERS, INC., REEBOK INTERNATIONAL, LTD., EMMITT ZONE, INC., and ADVANTAGE MARKETING GROUP, INC., | § § § § § § § § § | Civil Action No. 3:04-CV-575-M |
| Defendants | § | |

**PLAINTIFF'S MOTION TO ENFORCE MEDIATION
SETTLEMENT AGREEMENT AND SUPPORTING BRIEF**

Pursuant to the Court's inherent power to enforce an agreement to settle a case pending before it, Plaintiff, Walter G. Smith, moves the Court to enter judgment against defendants in conformity with that certain Settlement Agreement dated March 3, 2005 (the "Settlement Agreement").[1]

---

[1] Throughout this litigation, the defendants have withheld documents from discovery, have refused to answer interrogatories fully, and, generally, have violated the rules of discovery, the court's scheduling order, and the court's order regarding certain discovery issues.  Now, the defendants have delayed the closing of the mediation settlement agreement by demanding terms that were not discussed at the mediation and that exceed the clear language of the mediation settlement agreement.  In sum, the defendants' conduct has been unreasonable and vexatious and has multiplied the proceedings in this case.

## I.   INTRODUCTION

On March 3, 2005, the parties mediated this case. At the conclusion of the mediation, the parties signed a settlement agreement.

By this motion, Plaintiff asks the court to enforce that agreement.

## II.   SUMMARY OF THE CASE

This is a Copyright infringement case.

During a Dallas Cowboys' football game, Plaintiff photographed former Dallas Cowboy football star, Emmitt Smith, kneeling with a football on the star located in the center of the playing field at Texas Stadium (the "Image").

Approximately one year later, Plaintiff learned the defendants, without his permission, were offering for sale various items that prominently displayed the Image.

Plaintiff attempted to negotiate a reasonable license agreement with the defendants, to no avail. Thus, Plaintiff filed this lawsuit to collect damages in connection with the Defendants' infringement of his Copyrighted Image.

## III.   FACTS PERTAINING TO SETTLEMENT

On March 3, 2005, the parties compromised and settled their claims against each other, after a full day of mediation. That same day, they executed the Settlement Agreement, a true and correct copy of which is attached to this motion as Exhibit "A," and incorporated hereby by reference for all purposes.

The terms of the Settlement Agreement are clear and unambiguous. The Defendants were required to pay the Plaintiff $275,000 on or prior to March 15, 2005. *See* Exhibit "A," ¶¶1-2. The parties further agreed to prepare and to submit an agreed

order of dismissal and to execute mutual general releases of all claims existing as of March 3, 2005. *See* Exhibit "A," ¶¶3-4.

On March 8, 2005, Plaintiff's counsel prepared an agreed order of dismissal and offered to prepare a mutual general release form, as contemplated by the Settlement Agreement. *See* Email Communications dated March 8, 2005, true and correct copies of which are attached collectively to this motion as Exhibit "B." Defendants' counsel declined this offer and stated that she would "prepare the Compromise Settlement Agreement and Release of all Claims for filing in this matter." *Id.* In response, Plaintiff's counsel stated "the settlement terms were adequately covered by the agreement that was signed at the mediation... ." *Id.*

On March 15, 2005, the day on which the Settlement Agreement required defendants to pay Plaintiff $275,000, defendants' counsel still had not sent Plaintiff's counsel any proposed documentation. Thus, Plaintiff's counsel again offered to prepare a mutual general release form and reminded the defendants' counsel that the Settlement Agreement required the defendants to make payment by the end of that day. *See* Email Communications dated March 15, 2005, true and correct copies of which are attached collectively to this motion as Exhibit "C."

The defendants' counsel tendered a check to Plaintiff's counsel at the end of business on March 15, 2005; however, she instructed Plaintiff's counsel to hold the money in trust "until such time as the Mutual General Settlement Release has been fully executed and returned to my attention."[2]  *See* Correspondence dated March 15, 2005

---

[2] Ironically, at the time of this letter, Plaintiff's counsel had not tendered the referenced document to Plaintiff's counsel for review. Indeed, she admitted "counsel for the individual Defendants are reviewing the Mutual General Release... ."

from Julie Celum to James E. Davis and Brad C. Mall, a true and correct copy of which is attached to this motion as Exhibit "D."

On March 16, 2005, the defendants' counsel finally tendered to Plaintiff's counsel a 5-page document (excluding execution pages and exhibits) entitled "Settlement Agreement and Mutual General Release." A true and correct copy of this document is attached to this motion as Exhibit "E." Although the document contained mutual general releases, as contemplated by the Settlement Agreement, it also contained numerous additional warranties, covenants, and conditions that were not discussed at the mediation and to which the parties never agreed, including a "confidentiality and non-disparagement" provision. *See* Exhibit "E," ¶ 5.12.

On March 17, 2005, Plaintiff's counsel notified the defendants' counsel that the Plaintiff objected to the defendants' attempt to include a "confidentiality and non-disparagement" provision in the mutual release document. Specifically, Plaintiff's counsel stated:

> [W]e object to any confidentiality provisions. There was nothing said about this at mediation. The mediation settlement agreement says nothing about it. We confirmed with John Cone [the mediator] at the mediation that the settlement agreement was silent as to confidentiality.

*See* Email Communication dated March 17, 2005, a true and correct copy of which is attached to this motion as Exhibit "F."

On March 18, 2005, Plaintiff's counsel reiterated Plaintiff's objection to the proposed confidentiality provision:

> I have not heard from you regarding the mutual release. I understand that your client wants a confidentiality provision but our client did not agree to that at mediation.

> I believe the settlement agreement from the mediation is clear and unambiguous but if it would help, we can discuss the matter with John Cone [the mediator].

*See* Email Communications dated March 18-23, 2005, a true and correct copy of which is attached to this motion as Exhibit "G."

On March 21, 2005, the defendants' counsel replied to the Emails of March 17 and 18. She stated that she had been sick and out of the office. She also indicated she needed to discuss the Plaintiff's objection to the proposed "confidentiality and non-disparagement" clause with her co-counsel (whom she said was in trial). *See Id.*

On March 23, 2005, the defendants' counsel requested permission to insert a provision in the mutual release document to prohibit the Plaintiff from entering Texas Stadium as a photographer for any Dallas Cowboys home football games. *See* Email communications dated March 18-23, 2005, a true and correct copy of which is attached to this motion as Exhibit "H." Defendants' counsel did not address the Plaintiff's objection to the proposed "confidentiality and non-disparagement" clause. *Id.*

In response, Plaintiff's counsel pointed out that it was not necessary for the defendants to insert a provision in the settlement documents to ban Plaintiff from Texas Stadium because the Cowboys are free to deny anyone admittance to Texas Stadium, including the Plaintiff. *Id.* Nonetheless, Plaintiff's counsel agreed that such a clause could be added to the documentation (despite the fact such a provision was not part of the settlement between the parties), if that would facilitate closure of the settlement. *Id.*

On March 28, 2005, the defendants' counsel tendered a revised Settlement Agreement and Mutual General Release, a true and correct copy of which is attached to this motion as Exhibit "I." The revised document did not contain the contested

"confidentiality and non-disparagement" provision; however, the new document, like the original, was marked "Confidential" in its footer and, further, it contained a recital that "the Parties wish for this Mutual General Release to be confidential... ." *See* Exhibit "I," p. 1.  In addition, as the parties had discussed, the revised document contained a provision to bar the Plaintiff from Texas Stadium; however, the provision also purported to prohibit Plaintiff from attending Dallas Desperados arena football games at the American Airlines Center, which was never discussed at mediation, was not part of the mediation Settlement Agreement, and was not part of the Plaintiff's agreement by Email on March 23rd.  *See* Exhibits "A, " and "H."

Plaintiff's counsel immediately objected to the defendants' revised draft of the so-called "Settlement Agreement and Mutual General Release."  By Email, Plaintiff's counsel stated:

> We have three issues with your most recent draft:
>
> 1.   The recital language states the parties desire to keep the Mutual Release "confidential."  This may be a simple oversight but it needs to be removed.
>
> 2.   The footer of the Mutual Release also contains the word "Confidential," which, again, may be a simple oversight but it should be removed.  The bottom line is that there is nothing "confidential" about the document or its contents.  There is nothing in the document that is a Cowboys trade secret, *etc.*  It is merely a mutual release that contains largely boiler plate terms. . ..
>
> 3.   As to paragraph 5.6, please delete the reference to the Dallas Desperados, as there was never any discussion of or agreement to any restriction on Walt Smith's ability to attend such games for any purpose.

*See* Email Communication dated March 28, 2005, a true and correct copy of which is attached to this motion as Exhibit "J."[3]

Later the same day, Plaintiff's counsel advised defendants' counsel that the Plaintiff would not tolerate any further delay and that if the matter was not closed by the end of the day, then Plaintiff would file a motion to enforce the mediation settlement. In response, the defendants' counsel said "[f]ile your motion and we can have the Judge sort out our issues." *See* Email Communication dated March 28, 2005, a true and correct copy of which is attached to this motion as Exhibit "L."

### IV. ARGUMENTS AND AUTHORITIES

"Federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced." *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35- 36 (5th Cir.1967). Thus, a District Court has the power to enforce summarily a settlement agreement reached in a case pending before it. *Von Drake v. Core, Inc., et al.*, 2003 WL 22234922 *9 (N.D. Tex. July 17, 2003).

If enforcement of the settlement agreement is opposed based on a challenge to the agreement itself, the parties must be allowed an evidentiary hearing on the disputed issues fo the validity and the scope of the agreement.[4] *Id. See also Mid-South Towing Co. V. Har-Win, Inc.,* 733 F.2d 386, 390 (5th Cir. 1984). "The movant bears the burden

---

[3] Certainly, Plaintiff could have objected to all the extraneous warranties, covenants, and conditions that the defendant purported to annex to the mutual general release; however, at the time, Plaintiff was willing to accept these terms so long as the objectionable confidentiality provision were deleted.

[4] Plaintiff cannot imagine that the defendants will dispute any of the factual representations contained in this motion and therefore, Plaintiff does not believe an evidentiary hearing will be necessary.

of proof and the court is empowered to make factual findings based on the evidence presented during the evidentiary hearing." *Von Drake*, 2003 WL 22234922, at *9.

Here, the issue before the court is a narrow one–whether the defendants may add terms that the parties never discussed and to which they never agreed at mediation to the "mutual general releases" that are contemplated by the Settlement Agreement.

Clearly, they may not.

The Settlement Agreement memorializes a full and final compromise of claims between the Plaintiff and the defendants. Elegant in its simplicity, it required merely three things of the parties: (1) a payment of $275,000 by defendants to Plaintiff; (2) an agreed order of dismissal; and (3) mutual general releases of any and all claims existing as of March 3, 2005.

There is no dispute between the parties regarding any of these three issues. First, the defendants tendered $275,000 to the Plaintiff's counsel on March 15. *See* Exhibit "D." Second, the parties have agreed to the language of an agreed order of dismissal. Third, and finally, the parties have agreed to the language of mutual general releases. *See* Exhibits "E," at ¶¶1.1-1.2, and "I," at ¶¶1.1-1.2

The dispute between the parties regarding the scope of the Settlement Agreement arises out of the defendants' desire to add "Warranties and Representations," "Indemnification," "Assignment of Claims," and "General covenants," including the "confidentiality and non-disparagement" provision.[5] *See* Exhibits "E," and "I."

---

[5] Plaintiff certainly can understand why the defendants want a confidentiality provision given the way they ran rough-shod over the Plaintiff's rights through their willful infringement of his Copyrighted Image.

None of these additional terms were discussed at the mediation, nor were they part of the Settlement Agreement. Moreover, there is no provision in the Settlement Agreement that requires the parties to execute more formal settlement documents. To the contrary, the Settlement Agreement specifically identified two additional documents for the party to create–(1) an agreed order of dismissal; and (2) mutual general releases. Clearly, had the parties contemplated the preparation of more formal and expansive settlement documents, the Settlement Agreement could have and would have so stated.

In sum, the Settlement Agreement is clear on its face and constitutes a final and binding contract. The defendants may not muddy the waters or continue to delay the closing of the deal simply because they now want provisions that they did not request at mediation and to which the Plaintiff never agreed. Thus, the Court should enforce the Settlement Agreement summarily.

## V.   CONCLUSION

Based on the reasoning and authorities set forth above, Plaintiff respectfully requests the Court to enter judgment on the Settlement Agreement.

Respectfully submitted,

 /S/ James E. Davis
**JAMES E. DAVIS**
State Bar No. 05504200
**BRAD C. MALL**
State Bar No. 24007593

**DAVIS MUNCK, P.C.**
900 Three Galleria Tower
13155 Noel Road
Dallas, Texas 75240
(972) 628-3600 (Telephone)
(972) 628-3616 (Fax)

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served upon the following counsel of record pursuant to the Federal Rules of Civil Procedure on this the 31st day of March, 2005.

> Levi G. McCathern, II, Esq.
> McCathern | Mooty, L.L.P.
> 3710 Rawlins, Suite 1600
> Dallas, Texas 75219

> /S/ James E. Davis
> James E. Davis

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 28, 2005, I conferred with defendants' counsel, Julie L. Celum, regarding the substance of the foregoing motion. No agreement could be reached. *See* Exhibit "K." Accordingly, pursuant to Local Rule 7.1(b)(3), it is presumed that Defendants are opposed to this Motion..

> /S/ James E. Davis
> **James E. Davis**